RENDERED: JULY 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-0688-ME

DESHA CHENAULT          APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.     HONORABLE LUCINDA CRONIN MASTERTON, JUDGE
ACTION NO. 22-D-00096-001

RAY WASHINGTON          APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: ACREE, EASTON, AND JONES, JUDGES.

ACREE, JUDGE: Appellant, Desha Chenault, appeals the Fayette Family Court order granting Appellee, Ray Washington, a domestic violence order against her. After careful review, we reverse.

On January 24, 2022, Appellee filed a petition for the issuance both of an Emergency Protective Order (EPO) and a Domestic Violence Order (DVO)

against Appellant.[1] On March 18, 2022, the Fayette Family Court held a hearing on that petition and three others involving the parties and Camisha Young, the mother of Appellee's child.[2] Appellant and Appellee are not married, nor have they been married but were at one time in an on-again off-again sexual relationship. Prior to filing his petition, Appellee stopped seeing Appellant so he could rekindle his relationship with Young. At the March hearing, Appellee claimed Appellant verbally threatened him during their relationship. All parties proceeded *pro se* during the March hearing.

The family court granted Appellee's petition. Appellant retained counsel who filed a CR[3] 59.05 motion to alter, amend, or vacate alleging the

---

[1] Appellee used Form AOC 275.1 to petition the court. On his initial petition, Appellee checked the box for pursuing an Interpersonal Protective Order (IPO); *i.e.*, for relief available to "[a] victim of dating violence . . . ." Kentucky Revised Statute (KRS) 456.030(1); (Record (R.) 1-4). For reasons unknown, on the same day, a copy of the first and third pages of the petition were combined with a new second page that checked the box for pursuing a DVO; *i.e.*, for relief available to "any member of an unmarried couple . . . [for] protection under this chapter from domestic violence and abuse . . . ." KRS 403.750(1); (R. 5-8). From that point forward, the parties and the family court treated the petition as seeking the latter, including issuance of an EPO after finding the "allegations indicate an immediate and present . . . danger of domestic violence and abuse . . . ." (R. 12). The subsequent hearing was conducted based on the same allegations.

[2] During this hearing, the family court heard petitions Appellant and Appellee filed against each other, as well as petitions Appellant and Young filed against each other. The family court granted the relief sought in Appellee's and Young's petitions against Appellant. The court denied both of Appellant's petitions. Appellant appeals only the DVO entered against her based on the allegations in Appellee's petition.

[3] Kentucky Rules of Civil Procedure.

parties were not "[m]ember[s] of an unmarried couple" per KRS 403.720(6) and arguing, therefore, that the court improperly granted Appellee's petition. The Family Court denied this motion and Appellant appeals the final judgment granting Appellee's petition. Appellant advances the same argument pressed in the motion.

Before reaching the merits of this appeal, we must note Appellee did not file a brief in response to this appeal. Pursuant to RAP[4] 31(H)(3): "If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." RAP 31(H)(3). In this case, we choose to accept Appellant's statement of facts and issues as correct. We now turn to the merits.

This Court is authorized to reverse the family court's decision to issue a DVO if its decision is clearly erroneous or constitutes an abuse of discretion. *Guenther v. Guenther*, 379 S.W.3d 796, 802 (Ky. App. 2012) ("We bear in mind that in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial court were clearly erroneous or that it abused its discretion.") (citing *Cherry v. Cherry*, 634 S.W.2d

---

[4] Kentucky Rules of Appellate Procedure.

423, 425 (Ky. 1982); CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986)).

Pursuant to KRS 403.750: "[a]ny family member or any member of an unmarried couple may file for and receive protection under this chapter from domestic violence and abuse . . . ." KRS 403.750(1). In the context of the case under review, "domestic violence and abuse" is "the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between . . . *members of an unmarried couple*[.]" KRS 403.720(2)(a) (emphasis added). When no children are involved, as in this case, the family court can apply the statutes to protect "a member of an unmarried couple" from another such member if there is proof they "are living together or have formerly lived together[.]" KRS 403.720(6). The parties have no children in common. Therefore, Appellee needed to show he and Appellant were living together at the time of the petition's filing or that they had previously lived together.

The Kentucky Supreme Court, in *Barnett v. Wiley*, adopted a six-factor test to determine whether parties are cohabitating for purposes of seeking a DVO. 103 S.W.3d 17 (Ky. 2003); *see Iowa v. Kellogg*, 542 N.W.2d 514 (Iowa 1996). The factors are: "1. Sexual relations between the parties while sharing the same living quarters. 2. Sharing of income or expenses. 3. Joint use or ownership of property. 4. Whether the parties hold themselves out as husband and wife. 5.

The continuity of the relationship. 6. The length of the relationship." *Barnett*, 103 S.W.3d at 20 (citing *Kellogg*, 542 N.W.2d at 518 (internal citations omitted)).

None of these factors are present in this case. The definition of an unmarried couple under KRS 403.720(6) is not met.

There is no evidence the parties ever lived together or had done so in the past, nor is there any evidence the parties shared any form of expenses. The record shows Appellee did not consider himself to be in a relationship with the Appellant. Appellee swore as part of his petition that the parties "do NOT do . . . couple things," like "hold hands, kiss, hug, go out anywhere." Curiously, during the March hearing, Appellee said he had not even "take[n] her to Rally's [fast-food restaurant], so what do we got?" Although Appellee's subjective measure of a relationship here is not one this Court would adopt, it appears to have significance to Appellee and reinforces our conclusion that he did not consider his relationship with Appellant as that of an unmarried couple.

Finally, although we are unsure of the duration of the parties' sexual relationship, the record shows it was not one defined by its continuity, but what Appellee called "on-again off-again." The lack of continuity in their relationship, the failure to merely hold themselves out as a couple, and the absence of evidence showing the parties lived together all indicate Appellee cannot meet the definition of an unmarried couple pursuant to KRS 403.720(6).

For the foregoing reasons, we reverse the Domestic Violence Order entered by the Fayette Family Court in this case on March 18, 2022.

ALL CONCUR.

BRIEF FOR APPELLANT:         NO BRIEF FOR APPELLEE.

Corey M. Nichols
Lexington, Kentucky