RENDERED:  SEPTEMBER 22, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0307-ME

JOSEPH ALLEN HAMILTON, SR.                   APPELLANT

v.            APPEAL FROM SCOTT FAMILY COURT
HONORABLE LISA H. MORGAN, JUDGE
ACTION NO. 23-D-00024-001

MICHALENE BRITNEY MILBRY                   APPELLEE

OPINION
AFFIRMING IN PART AND REVERSING
AND REMANDING IN PART

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

CETRULO, JUDGE:  Joseph Allen Hamilton ("Hamilton") appeals, *pro se*, from

the issuance of a Domestic Violence Order ("DVO") against him by the Scott

Family Court.

At the outset, we note that Hamilton's brief fails to comply with

virtually every provision and requirement of our Rules of Appellate Procedure

("RAP").  He cites no case law or other authority to support his argument; he fails

to refer to the record or include any preservation statements; and he attaches items to the brief that are not part of the record. This Court recognizes that Hamilton is a *pro se* litigant, but that does not exempt him from the requirement to follow our rules. This Court has options as to how to address such non-compliance: (1) "ignore the deficiency and proceed with the review;" (2) strike the brief; or (3) review the matter for manifest injustice only. *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citations omitted).[1]

However, we also note that Appellee Michalene Britney Milbry ("Milbry") failed to file a brief. As stated in RAP 31(H)(3):

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

Again, this Court has the discretion to decline to exercise any of the options listed in RAP 31(H)(3). *See Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).[2] In this case, we do not specifically elect any of the options provided under RAP 31(H)(3). Instead, we review the grant of the DVO, mindful of the

---

[1] This case cites Kentucky Rule of Civil Procedure ("CR") 76.12, which has been replaced by RAP 31(H). Although this case uses our current rule's predecessor, the same options apply.

[2] Again, the case references CR 76.12(8)(c) – now RAP 31(H)(3) – however, the same concepts apply to the new rule.

family court's opportunity to assess the credibility of witnesses. "[W]e will only disturb the [family] court's finding of domestic violence if it was clearly erroneous." *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010) (citing CR 52.01 and *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986)).

## FACTS

Milbry and Hamilton have a minor child together and both were previously residents of Ohio. There was a shared parenting/visitation schedule, through Ohio, that the parties had generally followed for several years. Milbry had sole custody, and Hamilton had visitation. In October 2022, Milbry moved with the child to Scott County, Kentucky. This was done without consent or involvement of the Ohio courts and without notification to Hamilton.

In February 2023, Milbry filed a petition for an order of protection on her behalf and on behalf of the minor child. She alleged therein:

> Early November I started getting text messages from []
> Hamilton asking if I would get back together with him
> after 9 years of being separated and when I responded with
> no he became angry and started sending threatening
> messages saying if I don't get back with him the[n] he
> doesn't want anything to do with our son, also wishing
> death upon me, stating that he hopes my head gets blown
> off my shoulders, that I die in a car wreck, and that I need
> to be put down like a dog infected with parvo. I asked that
> he stop contacting me but it just got worse with about 20
> harassing messages back to back. I then changed my
> number and moved an hour away. He somehow found out
> my new number and new address, in the past week I have
> become very afraid for my safety and did purchase a

-3-

firearm for protection. Over the past week he has been contacting all of the elementary schools asking if our son goes there, I feel like he has been stalking me because I think I spotted his car in my neighborhood and son[']s school. I got a call from my son[']s school saying that he requested to have lunch and pick him up from school. I have major concerns for my son[']s safety if he is in his care, I am in the process of going to court to change his visitation time which he hasn't exercised in almost 6 months. I feel that he has to be on drugs and is mentally unstable because of his erratic behavior and may attempt suicide as he has threatened me with in the past. He has done prison time in the past for assault and has been arrested many times for assault on me, I have also had to file for protection orders in the past.

The family court conducted a hearing on February 15, 2023 and entered an order of protection for one year. Milbry was not represented at the hearing, although Hamilton was. Only the two parents testified, and no guardian *ad litem* ("GAL") was named to represent the minor child.

## ANALYSIS

We have reviewed the entire record and applicable law and, as to Milbry, we affirm the family court. In so doing, we note that there was no evidence that Milbry suffered a physical injury in Kentucky. The parties testified at the hearing about a previous protective order and prior assault charge in Ohio. However, the allegations in the petition were essentially limited to Hamilton sending threatening text messages to Milbry, which he did not deny. While only Milbry resided in Kentucky, Hamilton admitted coming to Kentucky on more than

one occasion to exercise visitation with their son. The family court determined that it had both personal and subject matter jurisdiction to address the DVO petition. The family court considered evidence on that petition only, noting that Ohio still maintained jurisdiction over the custody and visitation issues as Milbry had resided in Kentucky for only five months.[3]

Following a full hearing, a court may grant a DVO, under KRS 403.750(1), "if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]" *Buddenberg*, 304 S.W.3d at 720. KRS 403.720 defines domestic violence and abuse to include the "infliction of fear of imminent physical injury[.]"

It is not entirely clear what Hamilton is alleging on appeal, due to his failure to comply with our appellate court rules. However, the majority of his brief

---

[3] Ohio remained the home state at the time of this hearing.

> The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Kentucky at [Kentucky Revised Statute ("KRS")] 403.800 to 403.880, governs jurisdiction in determinations involving custody of a child. On the other hand, a Kentucky court has jurisdiction to enter an [Emergency Protective Order ("EPO")] or DVO to "[a]ny family member or member of an unmarried couple who is a resident of this state or has fled to this state to escape domestic violence and abuse. . . ." KRS 403.725(1). Unlike the residency requirements to establish home-state jurisdiction under the UCCJEA, there is no minimum time period to establish residency for a protective order.

*Bissell v. Baumgardner*, 236 S.W.3d 24, 30 (Ky. App. 2007) (citing *Spencer v. Spencer*, 191 S.W.3d 14, 17 (Ky. App. 2006)).

simply asserts that Milbry was not truthful in several aspects of her testimony. He acknowledged that he sent the texts, but had explanations for them at the hearing. He stated that Milbry's testimony as to the prior protective orders in Ohio was not accurate, but again, he did not deny that there were prior orders entered against him. He argued that he had been an involved parent and that Milbry had unilaterally relocated to Kentucky without giving him information on their son's school, and that this violated the prior custody and visitation orders from Ohio. However, as the family court noted, that was not the issue before the court on the petition for a DVO.

We reiterate that the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented. *Buddenberg*, 304 S.W.3d at 720. While perhaps another factfinder might not construe these texts and actions as implicitly threatening, we defer to the family court's assessment of the weight of the evidence and the credibility of witnesses, despite any conflicts in the evidence. We can only disturb its factual findings if they are not supported by substantial evidence. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). *See also* CR 52.01 and *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008). This Court has upheld a family court's finding that a threat or infliction of fear of physical injury was sufficient to support the grant of a DVO of protection. *See, e.g.*, *Hohman v. Dery*, 371 S.W.3d 780 (Ky. App. 2012) (evidence

supported the DVO where father, in part, threatened mother through texts). We affirm the family court on the DVO in favor of Milbry.

Hamilton does assert, however, that the DVO was not justified as to his son, who was named as an "other protected person" in the order granted by the family court. On this issue, we do have a concern. Our Supreme Court, in *Smith v. Doe*, 627 S.W.3d 903, 913 (Ky. 2021), recently held that the family court was required to appoint a GAL for unrepresented minor petitioners and respondents to an Interpersonal Protective Order ("IPO"). *Smith* also specifically noted that the statutes governing IPOs and DVOs are nearly identical, and that CR 17.03 applies to both. 627 S.W.3d at 908. The use of the word guardian in CR 17.03 does not *per se* mean parent and "mandates" the appointment of a GAL on behalf of an unrepresented minor in such proceedings. *Id.* at 913-15. In *Smith*, the Supreme Court noted that this was a matter of apparent first impression, but that decision was final in 2021. The petition in this case was not filed and the hearing in this matter was not conducted until 2023.

Pursuant to *Smith*, we conclude that the minor child of these parties should have had a GAL appointed to represent his interests. KRS 403.725(1)(b) provides that a petition for a DVO may be filed by a victim; or by an adult on behalf of a minor who is a victim of domestic violence and abuse. In this case, the form petition contained boxes selected by Milbry that indicated she was filing on

-7-

behalf of the minor as well as on her own behalf. She requested that Hamilton be restrained from going within a specified distance of both her residence and the minor child's school.

The order signed by the family court did not specifically indicate that the protective order was also being entered on behalf of the minor child. However, the minor child was listed as an "other protected person," and the family court did in fact restrain Hamilton from going within 500 feet of the minor child's school and specifically required supervised visitation with his minor son.[4]

Based upon the precedent in *Smith v. Doe*, we feel compelled to reverse and remand this matter to the family court to appoint a GAL on behalf of the minor child. We believe S*mith* requires that a minor child who is *listed as a party* on the petition for protection is in need of an appointed guardian. Specifically, the *Smith* Court stated that "[t]he GAL is the child's agent and is responsible . . . for making motions, for introducing evidence, and for advancing evidence-based arguments on the child's behalf." 627 S.W.3d at 915.

---

[4] The family court clearly recognized that a ruling from the Ohio court could result in the need to modify that temporary restriction, and the parties both indicated that there were motions set for hearing in Ohio within a few months of the hearing on this DVO. Thus, we recognize that there may have been subsequent developments in regard to the parties' timesharing and visitation that could affect the future proceedings and any need for future proceedings as to the child. However, we must address only the issue of whether the DVO was properly granted and supported by law.

Here, Milbry did not present any evidence or argument regarding the need for protection on behalf of the child. The petition indicated that it was being filed in part on behalf of the minor child, and the granting of relief by the family court affected the parental and visitation rights of Hamilton to his minor child. Pursuant to *Smith*, we believe that such a petition filed on behalf of a child and which concerns alleged acts of violence as to a minor, requires the appointment of a GAL. Under these circumstances, we conclude that the DVO shall remain in place as to Milbry but reverse the DVO as to the minor child, subject to any other rulings as to custody and visitation by the appropriate courts. We remand the matter for appointment of a GAL on behalf of the minor child and for future proceedings consistent with this Opinion.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Joseph Allen Hamilton, Sr., *pro se*
Cincinnati, Ohio